UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PLANNED PARENTHOOD OF INDIANA AND KENTUCKY, INC., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER, INDIANA STATE DEPARTMENT OF HEALTH, in her official capacity; PROSECUTORS OF MARION, LAKE, MONROE, and TIPPECANOE COUNTIES, INDIANA, in their official capacities; THE MEDICAL LICENSING BOARD OF INDIANA, in their official capacities, <br><br> Defendants. | Case No. 1:18-cv-01219-RLY-DLP |

**DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF**

Defendants, the Commissioner of the Indiana State Department of Health and the Prosecutors of Marion, Lake, Monroe, and Tippecanoe Counties, and the Medical Licensing Board of Indiana (collectively, "the State"), by counsel, hereby file their answer to the Complaint for Declaratory and Injunctive Relief ("the Complaint") filed in this action by Plaintiff Planned Parenthood of Indiana and Kentucky, Inc. ("PPINK").

**Introduction**

1.   Recently enacted Indiana Senate Enrolled Act No. 340 ("Enrolled Act"), signed into law by the Governor of the State of Indiana on March 25, 2018, imposes a new requirement on, among others, Planned Parenthood of Indiana and Kentucky, Inc.

("PPINK") and its physicians to report "all abortion complications." This term is defined so vaguely that it is impossible to determine what is or is not covered, despite the fact that failure to properly comply with the statute may, after July 1, 2018, lead to licensing consequences, and will, in 2019, be a crime. This vagueness offends due process. Moreover, even if not vague the definition of "complication" includes matters that are not considered complications at all as well as complications that are not likely to occur at all after abortions, but are more likely for other medical procedures. Imposing these requirements only concerning abortion procedures, which have been proven to be extremely safe with few complications is irrational. All of this violates due process and equal protection.

>   **ANSWER:** Indiana Senate Enrolled Act No. 340 speaks for itself. The remaining allegations set forth legal conclusions that do not require an answer, but to the extent that an answer is required, Defendants deny the allegations set forth in paragraph 1 of the Complaint.

2. The Enrolled Act also imposes uniquely onerous inspection requirements attendant to the relicensing of abortion clinics but no similar requirements upon similar outpatient settings or hospitals. This violates equal protection.

>   **ANSWER:** Indiana Senate Enrolled Act No. 340 speaks for itself. The remaining allegations set forth legal conclusions that do not require an answer, but to the extent that an answer is required, Defendants deny the allegations set forth in paragraph 2 of the Complaint.

3. Appropriate injunctive and declaratory relief should issue against the unconstitutional portions of the Enrolled Act.

**ANSWER:** The allegations set forth in paragraph 2 of the Complaint are legal conclusions that do not require an answer, but to the extent that an answer is required, Defendants deny the allegations set forth in paragraph 2 of the Complaint.

**Jurisdiction, venue, cause of action**

4. This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331, 1343.

**ANSWER:** The State admits the allegations set forth in paragraph 4 of the Complaint.

5. Venue is proper in this district pursuant to 28 U.S.C. §1391.

**ANSWER:** The State admits the allegations set forth in paragraph 5 of the Complaint.

6. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2201 and by Rule 57 of the Federal Rules of Civil Procedure.

**ANSWER:** The State admits that 28 U.S.C. § 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure authorize declaratory relief generally, but denies that such relief is appropriate in this case.

7. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

>  **ANSWER:** The State admits that Plaintiff seeks to bring this action under 42 U.S.C. § 1983, but denies that Plaintiff is entitled to any relief under that statute.

**Parties**

8. Planned Parenthood of Indiana and Kentucky, Inc., is a not-for-profit corporation with its principal place of business in Indiana. It brings this action on its own behalf, and on behalf of its patients and staff.

>  **ANSWER:** The State is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 8 of the Complaint.

9. The Commissioner of the Indiana State Department of Health is the duly appointed official in charge of that agency, which is responsible for licensing abortion clinics pursuant to Indiana law. She is sued in her official capacity and is designated by her official title pursuant to Fed. R. Civ. P. 17(d).

>  **ANSWER:** The State admits the allegations set forth in paragraph 9 of the Complaint.

10. The Prosecutors of Marion, Lake, Monroe, and Tippecanoe Counties, Indiana, are the duly elected prosecutors of the counties in which Planned Parenthood of Indiana and Kentucky health centers that provide abortion services are located and the prosecutors are responsible for prosecuting crimes occurring in their respective counties. They are sued in their official capacities and are designated by their official title pursuant to Fed. R. Civ. P. 17(d).

> **ANSWER:** The State admits the allegations set forth in paragraph 10 of the Complaint.

11. The Individual Members of the Medical Licensing Board of Indiana comprise the body that licenses and disciplines physicians in Indiana. They are sued in their official capacities and are designated by their official title pursuant to Fed R. Civ. P. 17(d).

> **ANSWER:** The State admits the allegations set forth in paragraph 11 of the Complaint.

**Legal background**

12. The Enrolled Act creates a new statutory section that requires all hospitals, physicians, and licensed abortion clinics to report to the Indiana State Department of Health information concerning the treatment of any and all patients for "abortion complications." Ind. Code § 16-34-2-4.7(b) (eff. July 1, 2018).

> **ANSWER:** The Enrolled Act speaks for itself.

13. The statute provides that:

> As used in this section, "abortion complication" means any adverse physical or psychological condition arising from the induction or performance of an abortion. The term includes the following:
>
>> (1) Uterine perforation.
>> (2) Cervical perforation.
>> (3) Infection.
>> (4) Hemorrhaging.
>> (5) Blood clots.
>> (6) Failure to terminate the pregnancy.
>> (7) Incomplete abortion (retained tissue).
>> (8) Pelvic inflammatory disease.
>> (9) Missed ectopic pregnancy.

>   (10) Cardiac arrest.
>   (11) Respiratory arrest.
>   (12) Renal failure.
>   (13) Metabolic disorder.
>   (14) Shock.
>   (15) Embolism.
>   (16) Coma.
>   (17) Placenta previa in subsequent pregnancies.
>   (18) Pre-term delivery in subsequent pregnancies.
>   (19) Free fluid in the abdomen.
>   (20) Hemolytic reaction due to the administration of ABO-incompatible blood or blood products.
>   (21) Hypoglycemia occurring while the patient is being treated at the abortion facility.
>   (22) Physical injury associated with treatment performed at the abortion facility.
>   (23) Adverse reaction to anesthesia or other drugs.
>   (24) Psychological or emotional complications, including depression, suicidal ideation, anxiety, and sleeping disorders.
>   (25) Death.
>   (26) Any other adverse event as defined by criteria provided in the Food and Drug Administration Safety Information and Adverse Event Reporting Program.

Ind. Code§16-34-2-4.7(a) (eff. July 1, 2018).

**ANSWER:** Indiana Code section 16-34-2-4.7(a) speaks for itself.

14. Although the statute is effective July 1, 2018, it also provides that before February 1, 2019, the Department of Health must inform the providers noted above of the new requirements concerning reporting of abortion complications. Ind. Code § 16-34-2-4.7(f).

**ANSWER:** Indiana Code section 16-34-2-4.7(f) speaks for itself.

15. The "abortion complications" are to be provided to the Indiana State Department of Health on a form to be developed by the Department before February 1, 2019. Ind. Code§ 16-34-2-4.7(c), (d) (eff. July 1, 2018).

[6]

   **ANSWER:** Indiana Code sections 16-34-2-4.7(c) and (d) speak for themselves.

16. The statute provides that physicians, hospitals, and abortion clinics are required to submit this report. Ind. Code § 16-34-2-4.7(b).

   **ANSWER:** Indiana Code section 16-34-2-4.7(b) speaks for itself.

17. The report must include the following information:

> (1) The date the patient presented for treatment for the abortion complication.
> (2) The age of the patient.
> (3) The race of the patient.
> (4) The county and state of the patient's residence.
> (5) The type of abortion obtained by the patient.
> (6) The date of abortion obtained by the patient.
> (7) The name of the:
>  (A) abortion clinic;
>  (B) medical facility; or
>  (C) hospital; where the patient obtained the abortion.
> (8) Whether the patient obtained abortion medication via mail order or Internet web site, and if so, information identifying the source of the medication.
> (9) Whether the complication was previously managed by the abortion provider or the abortion provider's required back-up physician.
> (10) The name of the medications taken by the patient as part of the pharmaceutical abortion regimen, if any.
> (11) A list of each diagnosed complication.
> (12) A list of each treated complication, with a description of the treatment provided.
> (13) Whether the patient's visit to treat the complications was the original visit or a follow-up visit.
> (14) The date of each follow-up visit, if any.
> (15) A list of each complication diagnosed at a follow-up visit, if any. (16) A list of each complication treated at a follow-up visit, if any.

Ind. Code§16-34-2-4.7(e) (eff. July 1, 2018).

   **ANSWER:** Indiana Code section 16-34-2-4.7(e) speaks for itself.

18. Each year the Indiana State Department of Health must summarize the aggregate data collected and submit it to the United States Centers for Disease Control and Prevention for inclusion in its annual Vital Statistics Report. Ind. Code § 16-34-2-4.7(h) (eff. July 1, 2018).

    **ANSWER:** Indiana Code section 16-34-2-4.7(h) speaks for itself.

19. The statute provides that no identifying information of the women will be included in the report. Ind. Code§16-34-2-4.7(a) (eff. July 1, 2018).

    **ANSWER:** Indiana Code section 16-34-2-4.7(a) speaks for itself.

20. After August 31, 2019, the failure to report an abortion complication will be a Class B misdemeanor. Ind. Code §16-34-2-4.7(j) (eff. July 1, 2018).

    **ANSWER:** Indiana Code section 16-34-2-4.7(j) speaks for itself.

21. At the current time existing regulations of the Indiana State Department of Health require that hospitals, ambulatory outpatient surgical centers, and abortion clinics inform the Department of "reportable events." 410 IAC 15-1.4-2.2 (hospitals); 410 IAC 15-2.4-2.2 (ambulatory outpatient surgical centers); 410 IAC 26-6-2 (abortion clinics) These regulations are identical, except for the facilities to which they apply, and note as reportable events such things as: surgery performed on the wrong patient or body part; mistaken retention of foreign objects in a patient following surgery; patient death or serious disability associated with use of contaminated drugs, devices, biologics, medication error, falls, or burns.

    **ANSWER:** 410 Indiana Administrative Code sections 15-1.4-2.2, 15-2.4-2.2, and 26-6-2 speak for themselves.

22. Indiana law provides that a "license to operate a hospital, an ambulatory outpatient surgical center, an abortion clinic, or a birthing center" is applied for and renewed annually and may be renewed "annually upon payment of a renewal fee." Ind. Code § 16-21-2-14(1), (5).

> **ANSWER:** Indiana Code sections 16-21-2-14(1) and (5) speak for themselves.

23. At the current time Indiana State Department of Health may inspect an abortion clinic each year, and conduct a complaint investigation at any time. Ind. Code § 16-21-2-2.6. Current regulations provide that the licensing survey shall occur at least once every two years. 410 IAC 26-3-2(a). The Enrolled Act changes this to specify that the Department "shall inspect an abortion clinic" at least once a year. Indiana Code § 16-21-2-2.6 (eff. July 1, 2018). There are no similar statutes requiring an annual inspection of hospitals and ambulatory outpatient surgical centers.

> **ANSWER:** Indiana Code section 16-21-2-2.6 and 410 Indiana Administrative Code section 26-3-2(a) speak for themselves.

24 An abortion clinic may lose or be denied a license for violating any provisions of Indiana Code 16-21 or if it permits, aids, or abets the commission of any illegal acts in the clinic; engages in conduct or practices found to be detrimental to its patients; or if the application submitted or supporting documentation provides inaccurate information. 410 IAC 26-2-5(3), (6), (7).

> **ANSWER:** 410 Indiana Administrative Code sections 26-2-5(3), (6), and (7) speak for themselves.

25. Under Indiana law the Indiana Medical Licensing Board regulates physicians, Indiana Code § 25-22.5-2-7; 844 IAC 5-2-1, and has the power to discipline any physician who, among other things, "knowingly violate[s] any state statute or rule, or federal statute or regulation, regulating the profession in question," Indiana Code § 25-1-9-4(3).

> **ANSWER:** Indiana Code sections 25-22.5-2-7 and section 25-1-9-4(3) and 844 Indiana Administrative Code section 5-2-1 speak for themselves.

26. A physician with an Indiana license who commits a crime that has a direct bearing on the physician's ability to practice competently or is harmful to the public or who knowingly violates any state law or rule regulating the medical profession is subject to discipline from the Indiana Medical Licensing Board. Ind. Code § 25-1-9-4(a)(2), (3).

> **ANSWER:** Indiana Code sections 25-1-9-4(a)(2) and (3) speak for themselves.

**Factual allegations**

*General facts*

27. PPINK operates numerous health clinics in Indiana where thousands of women, men, and teens are able to receive reproductive health care services and comprehensive sexuality education.

> **ANSWER:** The State is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 27 of the Complaint.

28. PPINK operates three health centers in Indiana, located in Bloomington, Merrillville, and Indianapolis, which offer both surgical abortion services and abortions using medications alone (known as "medication abortions").

> **ANSWER:** The State admits the allegations set forth in paragraph 28 of the Complaint.

29. Additionally, PPINK operates a health center in Lafayette, Indiana, which provides only medication abortions.

> **ANSWER:** The State admits the allegations set forth in paragraph 29 of the Complaint.

30. At PPINK, surgical abortions are available through the first trimester of pregnancy, 13 weeks and 6 days after the first day of a woman's last menstrual period, as determined by ultrasound.

> **ANSWER:** The State is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 30 of the Complaint.

31. Medication abortions are currently available through 70 days after the first day of a woman's last menstrual period as determined by ultrasound.

> **ANSWER:** The State is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 31 of the Complaint.

32. PPINK both employs and contracts with physicians who provide abortion services.

>    **ANSWER:** The State is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 32 of the Complaint.

33.   Although PPINK is the largest provider of first trimester abortions in Indiana, only a small percentage of its patients receive abortion services, with the bulk of its patients receiving other health services.

>    **ANSWER:** The State is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 33 of the Complaint.

>    *The new inspection and licensing requirements*

34.   PPINK is required to apply each year to the Indiana State Department of Health for renewal of its license to operate each of its existing health centers providing abortion services.

>    **ANSWER:** The State admits the allegations set forth in paragraph 34 of the Complaint.

35.   Until 2018, PPINK's health centers providing abortion services were inspected every other year by the Indiana State Department of Health.  In 2018 the health centers were inspected 13 or 14 months after the prior inspection.

>    **ANSWER:** The State admits the allegations set forth in paragraph 35 of the Complaint.

36. These inspections are staff intensive. They take at least two full days and require the presence of PPINK's vice-president of patient services, regional director, quality/risk manager, and director of clinical services.

> **ANSWER:** The State is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 36 of the Complaint.

37. On information and belief, after July 1, 2018, the effective date of Indiana Code § 16-21-2-2.6, abortion clinics will be required to be inspected annually while no similar statutory requirement will be imposed on hospitals and ambulatory outpatient surgical centers.

> **ANSWER:** Indiana Code section 16-34-2-2.6 speaks for itself.

*Abortion complications*

38. Although the criminal penalties for failing to report abortion complications are not effective until August 31, 2019, the law itself is effective on July 1, 2018, and PPINK will therefore have to begin collecting the necessary information and begin to prepare to file reports when required.

> **ANSWER:** The State admits the allegations set forth in paragraph 38 of the Complaint.

39. Although the statute requires that PPINK report all "abortion complications," the definition of that term, "any adverse physical or psychological condition arising from the induction or performance of an abortion," Ind. Code § 16-34-2-4.7(a), is so

[13]

broad as to be meaningless and provides no guidance to PPINK and its health providers. The term is vague and uncertain.

> **ANSWER:** The allegations set forth in paragraph 39 of the Complaint are legal conclusions that do not require an answer, but to the extent that an answer is required, Defendants deny the allegations set forth in paragraph 39 of the Complaint.

40. The vagueness is compounded by the fact that some of the items on the list are not complications of abortion at all. Moreover, the listing of examples of complications cite many medical conditions which are both extremely rare for abortions and are more likely to occur after other medical procedures. And at least one of the "abortion complications," *e.g.*, "blood clots," is a typical, transient, and potential side effects of abortions. *See, e.g.*, Indiana State Department of Health, *Abortion Informed Consent Brochure,* http:jjwww.in.gov/isdhffiles/Abortion_Informed_Consent_Brochure.pdf (last visited on March 29, 2018) (noting that after a surgical abortion "[y]ou may have cramping and bleeding after the procedure" and "[y]ou may pass a few blood clots and experience heavy bleeding for a few days" [at 7], and that in a medication abortion one of the drugs used cause "cramps, heavy bleeding, and expulsion of the embryo" [at 8]).

> **ANSWER:** The State denies the allegations set forth in paragraph 40 of the Complaint because they are vague and ambiguous.

41. Despite the fact that abortions have been repeatedly recognized as safe with minimal adverse side effects, on information and belief, there are no other

[14]

Indiana laws or regulations that impose comparable reporting requirements on physicians and health care facilities following procedures other than abortions, even though there is a much greater chance that many of the potential complications listed will occur with procedures other than abortions.

>**ANSWER:** The State denies the allegations set forth in paragraph 41 of the Complaint because they are vague and ambiguous.

42. Although the Enrolled Act provides that the data collected will be submitted to the United States Centers for Disease Control and Prevention for its inclusion in the annual Vital Statistics Report, there is no requirement imposed by the federal government or federal law or regulation that such information be submitted and the Centers for Disease Control has requested only information on maternal age, gestation age, race, ethnicity, method type of abortion, marital status, number of previous live births, number of previous abortions, state of residence, and abortion mortality. Centers for Disease Control and Prevention, *Abortion Surveillance-United States, 2014* https://www.cdc.gov/mmwr/volumes/66/ss/ss6624a1.htm (last visited Apr. 18, 2018).

>**ANSWER:** The State denies the allegations set forth in paragraph 42 of the Complaint because they are vague and ambiguous.

>*Concluding allegations*

43. PPINK is committed to advocating for its patients' rights to obtain abortion services as constitutionally protected and to protect their rights to privacy.

> **ANSWER:** The State is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 43 of the Complaint.

44. At all times defendants will act under color of state law.

> **ANSWER:** The State admits that at all times relevant to this matter Defendants have acted under color of state law but otherwise denies the allegations set forth in paragraph 44 of the Complaint because they are vague and ambiguous.

45. The actions of the defendants will cause PPINK, its patients, and staff irreparable harm for which there is no adequate remedy at law.

> **ANSWER:** The State denies the allegations set forth in paragraph 45 of the Complaint.

**Legal claims**

46. The new inspection provision of the Enrolled Act, Indiana Code § 16-21-2-2.6 (eff. July 1, 2018)), impose an annual inspection requirement on abortion clinics, including PPINK, even though similar requirements are not imposed on other medical facilities that are engaging in far riskier procedures. This is irrational and arbitrary and violates the Equal Protection Clause of the Fourteenth Amendment.

> **ANSWER:** The State denies the allegations set forth in paragraph 46 of the Complaint.

47. Indiana Code § 16-34-2-4.7 (eff. July 1, 2018), requiring the identification and reporting of "abortion complications," establishes vague and uncertain standards and

is otherwise irrational and arbitrary in violation of the Due Process Clause of the Fourteenth Amendment.

**ANSWER:** The State denies the allegations set forth in paragraph 47 of the Complaint.

48. Indiana Code § 16-34-2-4.7 (eff. July 1, 2018), requiring the identification and reporting of "abortion complications" imposes unique and burdensome obligations concerning abortions, while ignoring other medical procedures that are far more likely to cause complications It is irrational and discriminatory in violation of both the Due Process and the Equal Protection Clauses of the Fourteenth Amendment.

**ANSWER:** The State denies the allegations set forth in paragraph 48 of the Complaint.

WHEREFORE, Planned Parenthood of Indiana and Kentucky, Inc., requests that this Court:

a. Accept jurisdiction of this case and set it for hearing at the earliest opportunity.

b. Enter a declaratory judgment that the above provisions of the Enrolled Act are unconstitutional for the reasons noted above.

c. Enter a preliminary injunction, later to be made permanent, enjoining, Indiana Code§§16-21-2-2.6 and 16-34-2-4.7(a) (eff. July 1, 2018).

d. Award plaintiff its reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

e. Award all other proper relief.

**ANSWER:** The State denies any factual allegations set forth in paragraphs a through e of the Plaintiff's "Request for relief" and denies that Plaintiff is entitled to any of the relief requested therein.

## AFFIRMATIVE DEFENSES

1. One or more claims asserted by Plaintiff fail to state a claim upon which relief can be granted.

2. Plaintiff's rights, privileges, and immunities secured under the Constitution or laws of the United States have not been violated by any alleged action, inaction, or omission of Defendants, and Defendants, at all times, acted in compliance and consistent with the Constitution and laws of the United States and the State of Indiana.

3. Indiana Code section 16-21-2-2.6 is not irrational and arbitrary in violation of the Equal Protection Clause of the Fourteenth Amendment and is not unconstitutional.

4. Indiana Code section 16-34-2-4.7 does not establish vague and uncertain standards and is not otherwise irrational and arbitrary in violation of the Due Process Clause of the Fourteenth Amendment, is not irrational and discriminatory in violation of the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment, and is not unconstitutional.

          Respectfully submitted,

          CURTIS T. HILL, Jr.
          Indiana Attorney General

By:  */s/ Thomas M. Fisher*
       Thomas M. Fisher
       Solicitor General

       Julia C. Payne
       Deputy Attorney General

       Office of the Indiana Attorney General
       IGC-South, Fifth Floor
       302 West Washington Street
       Indianapolis, Indiana 46204-2770
       Telephone: (317) 232-6255
       Fax: (317) 232-7979
       Email: Tom.Fisher@atg.in.gov

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2018, a copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

| | |
|---|---|
| Kenneth J. Falk<br>ACLU OF INDIANA<br>kfalk@aclu-in.org | Jan P. Mensz<br>ACLU OF INDIANA<br>jmensz@aclu-in.org |
| Gavin M. Rose<br>ACLU OF INDIANA<br>grose@aclu-in.org | Carrie Y. Flaxman<br>PLANNED PARENTHOOD<br>FEDERATION OF<br>AMERICA<br>Carrie.flaxman@ppfa.org |

          */s/ Thomas M. Fisher*
          Thomas M. Fisher
          Solicitor General

Office of the Attorney General
Indiana Government Center South, Fifth Floor
302 West Washington Street
Indianapolis, Indiana 46204-2770
Telephone: (317) 232-6255
Fax: (317) 232-7979
Email: Tom.Fisher@atg.in.gov